**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| FRANCINE A. FULLER and<br>PETER A. PIETROSKI,<br><br>        PLAINTIFFS<br><br>v.<br><br>WVMF FUNDING, LLC AND<br>WILMINGTON SAVINGS FUND SOCIETY,<br>FSB, AS TRUSTEE OF STANWICH<br>MORTGAGE LOAN TRUST I<br><br>        DEFENDANTS<br><br>AND RELATED ACTION | Case No. 1:21-cv-00290-NT |

**DEFENDANT AND COUNTER-CLAIMANTS'**
**MOTION FOR SUMMARY JUDGMENT**
**and INCORPORATED MEMORANDUM OF LAW**

    COMES NOW Defendant WVMF FUNDING, LLC (hereinafter "WVMF") and WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST I (hereinafter "Wilmington") by and through undersigned counsel and submits the following Motion for Summary Judgment on the Complaint and the Counterclaim.

    **I.    OVERVIEW OF THE CASE**

    A.    The Complaint

    In the amended complaint before this Court (ECF 6), the mortgagors who prevailed in an earlier foreclosure seek a declaration that the mortgage is no longer enforceable, must be discharged, and that the Plaintiffs (the

1

mortgagor/borrowers) be declared the owners of the mortgaged property free and clear of the mortgage title interest that secures the loan that allowed them to purchase the property in the first place.

The Plaintiff's case mirrors that brought by similarly situated borrowers in *Pushard v. Bank of America, N.A.*, 2017 ME 230, 175 A.3d 103.

As repeatedly agreed by all parties to this litigation, two matters before the Law Court since 2021 appeared controlling enough justify a stay in these proceedings, and other suits pending before this United States District Court, and other Maine Courts, pending the Law Court's decisions.

Those decisions, *Finch v. U.S. Bank, N.A.*, 2024 ME 2, 307 A.3d 1049, and *J.P. Morgan Mortg. Acquisition Corp. v. Moulton,* 2024 ME 13, 314 A.3d 134, *as revised* (Mar. 19, 2024) have now been published.

As a result, and as briefed below, Defendants are entitled to Judgment on Plaintiffs' Complaint.

  B.  The Counterclaim

The mortgagee/lender has counterclaimed, also seeking judicial declarations. Those include (in the order to be briefed):

  A.  That the mortgage in question remains valid and enforceable.

  B.  That although seemingly axiomatic, a judicial declaration that this action is one that the mortgage defines as a "legal proceeding that may significantly affect Lender's rights in the Property" thereby rendering fees, costs, and expenses defending Wilmington's title interest as "additional debt", bearing interest at the note rate from the date expended.

C. That WMVF's crediting of the mortgagor/borrowers unreimbursed escrow advances in the amount of the attorney's fees awarded constituted a valid and allowable offset satisfying the fees judgment/award to the borrowers.

D. A declaration of the amounts remaining secured by the mortgage in the form of unpaid principal, interest, unreimbursed escrow advances, other expenses and fees, *and* an order setting the going forward terms of borrower's remaining periodic repayment obligation.

## II.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' COMPLAINT

A. Plaintiffs' Amended Complaint (ECF 6) rests upon a now overruled precedent. Paragraph 22 contains the key allegation before this Court. That allegation states, "[a]s a result of the Judgment, the Mortgage became unenforceable." The prayer of that document requests, at page 5, an order declaring that "the Mortgage and the note which it secures are unenforceable and that Fuller and Pietroski hold title to the Property free and clear of the mortgage encumbrance created by the Mortgage . . ."

The Judgment in Question (Exhibit J-7) was entered **May 13, 2020**. (JSF 13). The note and mortgage referred in the Amended Complaint and the Judgment are before this Court as Exhibits J-2 and J-3.

Plaintiffs' claims are based upon the then existing but now expressly overruled case of *Pushard v. Bank of Am., N.A.*, 2017 ME 230, 175 A.3d 103. The Law Court's 2024 decision in *Finch v. U.S. Bank, N.A.*, 2024 ME 2 ¶52, 307 A.3d 1049 followed by *J.P. Morgan Mortg. Acquisition Corp. v. Moulton,* 2024 ME

3

13, 314 A.3d 134, *as revised* (Mar. 19, 2024) strip the previous foreclosure judgment (Exhibit J-7)[1] of any effect on the continuing validity and enforceability of the Note and Mortgage in this case.

The terms of the mortgage (Exhibit J-3, p. 1-2) demonstrate that mortgagee (now Wilmington) has title to the property. "Maine is a title theory state, [so a] 'mortgage is a conditional conveyance vesting the legal title in the mortgagee, with only the equity of redemption remaining in the mortgagor.' " Please see *KeyBank Nat'l Ass'n v. Keniston*, 298 A.3d 800, 805 (Me. 2023) quoting *Johnson v. McNeil*, 800 A.2d 702, 704 (Me. 2002).

Some post-*Finch* and *Moulton* matters previously stayed, are already generating rulings. Just last week the much older, and already post-Declaratory Judgment case of *Girouard v. Wells Fargo Bank, N.A.*, No. 2:17-CV-00022-LEW, 2024 WL 3691670, at *1 (D. Me. Aug. 2, 2024) was re-visited and decided in favor of the mortgagee. Therein. Judge Walker found. "With *Pushard* having been overruled, Wells Fargo has demonstrated that it holds title to

*Finch, supra* at ¶6 tells us:

Based on section 6111's clear language, we conclude that when a lender fails to comply with section 6111's requirements, the **lender lacks the right to accelerate the note balance or commence a foreclosure action.** We further conclude that when a lender lacks the right to accelerate the note, the note cannot be, and is not, accelerated anyhow by the commencement of a foreclosure action that the lender also lacks the right to commence. The result

---

[1] It remains undisputed that the judgment in question was based upon a finding that the § 6111 Notice was defective (Exhibit J-7, p. 3-4).

is to overrule our holding in *Pushard* that a lender that has not complied with section 6111 can still commence a foreclosure action and accelerate the balance due. By overruling *Pushard*, we align our interpretation of the statute with its plain language.

[¶7] In the Bank's foreclosure action against Finch, the Bank's failure to comply with section 6111 means that the Bank could not accelerate the note balance or enforce the mortgage. For claim preclusion purposes, the fact that the Bank could not accelerate the note balance or enforce the mortgage means that the Bank's foreclosure case could not have been based upon any accelerated sum, given that (as stated in the plain language of the stature for foreclosure of the mortgage was not and could not have been litigated, and a subsequent foreclosure action would therefore not be barred.

(emphasis added)

At ¶ 39, the Court continues:

Contrary to our decision in *Pushard*, we conclude that when a lender fails to prove in a foreclosure action that it has issued a valid notice of acceleration **or** fails to prove that the borrower has breached the parties' contract, the parties are returned to the positions they occupied before the filing of the action (*except as to any claim for an unaccelerated amount due that could have been litigated*).

(Emphasis added)

Thus, in this case, neither the Note, nor the Mortgage could have been accelerated in the previous foreclosure case. That previous foreclosure has no legal impact on Plaintiff's action regardless of whether this Court treats Plaintiffs' action as one seeking "Declaratory Judgment" as titled, or whether it be deemed a Quiet Title Action (given the element's pleaded in Paragraphs 10 "continuous possession", 25 "apprehension the Defendants may claim some

right, title, or interest…", and 27 "quieting the title"); the result is the same: Judgment for Defendants.

### III. PLAINTIFF'S ACTION ATTACKS MORTGAGEE'S TITLE INTEREST

Paragraph 7 of the Mortgage is clear. This language is the equivalent of that contained in the mortgage before the Court in *Craig v. E-Trade Bank,* Docket No. BCD-RE-2015-02 (Maine Business and Consumer Court). Here, the Mortgage states:

". . .[O]r there is legal proceeding that may significantly affect Lender's rights in the Property. . .

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security instrument."

As the Lender did in the *Craig* case, *id.* not only did Defendant's plead the entitlement to fees under the mortgage, as a separate Count, Exhibit J-15 specifically cautions, ". . . .[P]lease note well that the terms of the mortgage call for our expenses defending our mortgage interest to be added to the indebtedness if you do not prevail.

Defendants are entitled to their fees and expenses defending this case.

### IV. THE ATTORNEY'S FEES AWARD

Before this suit commenced, Wilmington satisfied the 2021 Attorney's fees award in these Plaintiffs' favor by offsetting via credit, the outstanding unreimbursed tax and insurance advances made on their behalf in the total amount of the Award (Exhibit J-18).

6

The award was made in favor of Plaintiffs (Exhibit J-14). Thus, it was the Plaintiffs here who became the judgment creditors of the unsuccessful mortgagee in the foreclosure.

The ability to offset is pleaded as part of the Counterclaim. There is nothing about this specific offset that purports to reduce any outstanding balance save that owed by the Plaintiff's for reimbursement of their property taxes, and property/liability insurance.

Wilmington respectfully reserves further argument on this particular subject pending the filing of Plaintiff's motion at which time it will become know whether this offset is still opposed.

### V.  THE GOING FORWARD OBLIGATION

Because of Count III of the Counterclaim, before this Court pursuant to Maine's Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951–5963 are plenary questions concerning 'what's next".

"What's next" has different contexts pertaining to the issues before this Court. All pertain to clarifying and specifying these parties remaining rights and obligations to and from one another going forward regarding the Note (J-2), the Mortgage (J-3), and the secured property (J-1).

Wilmington asserts that this Court is presented with two operative inquiries. The first is "How much remains owed?" The second is: "How should it be paid back?" Each requires analysis, based upon the record before the Court.

The operative inquiry, post *Finch, supra.* and *Moulton, supra.* is, "What remains fair game for the mortgagee v. what is precluded?" Put a different way, what amount remains owing after applying the preclusion rules of *Finch, supra,* and *Moulton, supra.*?

The Court in *Moulton, supra.* cites *Finch, supra.* at ¶ 12 in stating:

Therefore, when a court enters summary judgment against a lender or dismisses the lender's foreclosure claim due to a deficient notice of the right to cure under section 6111, the effect of the judgment or dismissal of the claim is to preclude any future claim for the unaccelerated balance due on the note **as of the date of the judgment** (unless the lender has asserted a separate claim for the unaccelerated balance due).
It does not preclude the lender from bringing a future foreclosure claim based on a future default, nor does it discharge the entire mortgage or effect a transfer of title.
(emphasis added)

A.   **How Much Remains Owed?**

1)   How Many Payments are Included Within the "*Precluded Period*"?

Exhibit J-19 is helpful when considering the *number of payments* at issue. All the following items are undisputed:

a)   The last payment made was in September 2010 (Payment No. **18**), leaving the October 1, 2010 payment (Payment No. **19**) and all subsequent payments unpaid. (JSF 36).

b)   The foreclosure complaint was filed February 20, 2018 (Exhibit J-6) (JSF 11), at which time, the most recent payment was due on February 1, 2018 (Payment No. **107**)

8

c)  The foreclosure judgment was rendered on May 13, 2020. (Exhibit J-7 at which time, the most recent payment was due on May 1, 2020 (Payment No. **134**).

d)  Wilmington offered reinstatement of the loan effective November 1, 2021 with accompanying waivers. (Exhibit J-15).  In case this Court finds that date relevant, the most recent payment would have been due October 1, 2021 (Payment No. **144**).

e)  On October 13, 2021, Borrowers rejected "all claims and assertions" in Exhibit J-15 (Exhibit J-16).

The record before the Court (Exhibit J-19) thus demonstrates the accuracy of the following computations:

The borrowers missed **89** payments before the *filing* of the foreclosure case (107-18=89).

The borrowers missed **116** payments before the date of the foreclosure *judgment* (134-18=116).

Based upon the language chosen by the Court, it appears that Wilmington is precluded from collecting **116** of the **342** outstanding payments as of the date of the last payment made since these comprise the unaccelerated balance at the time of the previous foreclosure judgment.

The borrowers also made no payments between the date of the previous judgment and the next payment due on September 1, 2024.  That last missed payment was payment No. **185**. (Exhibit J-19)  Therefore, *after removing the precluded payments,* the borrowers currently owe **51** payments that are *not*

9

*precluded* by the previous foreclosure judgment (185 total payments-18 payments made-116 precluded payments= **51 non-precluded payments.** These 51 payments, together with the future payment obligations and the non-precluded principal balance due remain "fair game."

  B. How Should What Remains Owed be Paid Back?

That is not the only inquiry, however.  Once the **amount** that remains "fair game" as still owed as part of the secured sum due under the Note and Mortgage is determined, the **"when's and how's"** must also be decided.

 **Why?**  Because the judgment in this case was entered on May 13, 2020 (JSF 13, J-7).  Given the unequivocal rejection of WVMF's September 22, 2021 letter (J-15 & 16) (JSF 28 & 29), and Plaintiffs' failure to make any payment since 2010 (JSF 36), best case for borrowers is that the mortgage payment due June 1, 2020 and all payments since remain unpaid and owing.

As of August 1, 2024, the past due portion of those payments for Principal, and Interest alone would total **$42,724.74** ($837.74 x 51) (See Exhibit J-19).

Although borrowers have refused to concede that anything remains valid, *Finch, supra.* and *Moulton, supra.* mandate that they are not going to receive their hoped-for free house outcome.

The case at bar is likely the first since the overruling of *Pushard, supra.* that has progressed to the properly pleaded Declaratory Judgment Action wherein these matters are ripe.[2]

Between these parties, as in any case potentially involving default and possible foreclosure, 14 M.R.S.A. § 6111, will **require** that any enforcement, re-default, acceleration, or re-foreclosure will, by necessity, include a *precisely calculated* default amount to be paid within 35 days. Should that amount be the above calculated **$ 42,724.74 *plus*** outstanding escrows and other non-precluded fees and expenses*?* But such an outcome seems harsh, even for borrowers who have lived payment free for the fourteen years these plaintiffs have.

In *Malenfant, supra,* at ¶33 that Court found a middle ground consistent with Vermont's statutory scheme. It is the Vermont Court's *process* that benefits this Court and these parties, given the now mandated result that the Note and Mortgage *survive* the unsuccessful foreclosure.

Mindful of the strengths and weaknesses of these two conflicting approaches, we choose a third path that is both logically coherent and practically tenable. First, we conclude that any principal, interest, penalties, or other liabilities from borrowers to lender that accrued before the default and attempted acceleration on which the first **foreclosure** action was predicated

---

[2] Not even in the day's old case of *Girouard v. Wells Fargo Bank, N.A.*, No. 2:17-CV-00022-LEW, 2024 WL 3691670, at *1 (D. Me. Aug. 2, 2024) which followed *Finch, supra,* to **set aside** an already granted judgment were the questions regarding, "what's next" ripe for consideration.

have been definitively adjudicated in borrowers' favor. No subsequent claim by the lender can incorporate claimed arrearages of any sort that were due from borrowers to lender on or before the date of default on which the first action was based. This conclusion flows logically from the adjudication of lender's claim of default on the merits, and is consistent with both approaches outlined above.

¶ 34. Second, during the pendency of the first action that was dismissed with prejudice, no arrearage with respect to principal or interest, or fees or penalties for nonpayment of borrowers' monthly obligation, could have accrued. By attempting to accelerate the borrowers' debt on the note, albeit ultimately unsuccessfully, lender effectively suspended borrowers' obligation to make monthly payments of principal and interest such that, until such monthly obligation was reinstated, borrowers cannot be found in default or otherwise penalized for failing to make the payments.

¶ 35. Third, lender cannot claim that any interest on the outstanding principal balance accrued during the pendency of the foreclosure action. That claim effectively extended the term of the loan by placing borrowers' obligations into an indefinite legal limbo; the court's dismissal with prejudice reflects that the action was not warranted. If the consequence of the court's effective invalidation of lender's acceleration is to put the parties back in the position they would have been absent the dismissed claim of default, then the period of liability for subsequent interest payments faced by borrowers should not be prolonged on account of lender's unwarranted foreclosure action.

¶ 36. Fourth, borrowers' underlying obligation to pay the balance of principal due (calculated as if all due principal was timely paid up to the date of default upon which the first action was predicated), and to make monthly payments for interest on that outstanding principal, is not extinguished by the judgment with prejudice in the first case. However, borrowers' obligations to pay interest on the outstanding principal and to make monthly payments toward principal and interest are conditioned on thirty-days' notice from lender inviting borrowers to, without penalty, reinstate borrowers' monthly payments of principal and interest as established in the original, preclaimed-default note and instructing where to send any such payments. In other words, the court's dismissal of the first action "with prejudice" can "unaccelerate" the loan and restore borrowers' obligation to make monthly payments toward the still-outstanding principal and associated interest, but lender, having accelerated the loan, must provide notice to borrowers of the remaining principal amount due, the monthly payments due, the date payments are due, how to make those payments, and that failure to make the payments when due will constitute a default, with the consequences outlined in the note.[3]

Wilmington believes, therefore, that a fair, equitable, and computable result given Maine's statutory scheme and its applicable precedent under

---

[3] Given the unequivocal language of the Law Court, in *Finch, supra.* and Moulton, *supra.* precluding the secured collectability of the "unaccelerated balance at the time of the judgment," and the fact that these funds have previously been offset, the portion of the *Malenfant* analysis pertaining to preserving the right to reimbursement of advanced escrows is not quoted.

*Finch, supra,* and *Moulton, supra.* would be to place the parties where they were **at the time of the previous judgment**, May 13, 2020 (Exhibit J-8). Thus, is the borrowers' obligation reduced by **$103,125.50** (the amount of the then unaccelerated balance, including principal, interest, and PMI payments). Whether the remaining $6440.02 in unreimbursed escrow advances for property taxes and insurance is deemed precluded or not, over the years borrowers have derived the significant benefit calculated above from the clerical error upon which their foreclosure judgment was based. Even their attorney's fees award was offset by funds that borrowers did not have to pay over the years.[4]

This Court is facing the actually justiciable controversy about which previous cases could only speculate or predict. Here we have four years of payments between the date of the previous judgment, and the date that *Finch, supra.* and *Moulton, supra* were decided. We have a charging document placing before the Court the equitable question, "What do we do now?"

More equitable is that this Court will find a path re-establishing the borrowers' periodic payment obligation that has been interrupted since the foreclosure judgment.[5] This remains true, despite the fact that the borrowers

---

[4] The precedents for different treatment of unreimbursed tax and insurance advances, and the different scope of the right to collect v. the right to offset are briefed below.
[5] Even though the borrowers refused to resume payments or accept the offered reinstatement (JSF 28, 29, and 31) (Exhibits J-15 & J-16). In other words, despite having lost their free house bet rather than agree to pay *anything*.

Case 1:21-cv-00290-NT   Document 69   Filed 08/09/24   Page 15 of 17   PageID #: 381

refused to resume payments *or* accept the offered reinstatement (JSF 28, 29, and 31) (Exhibits J-15 & J-16)

Although considering all of the alternatives is not simple, a resolution that favors the borrowers, and removes all conceivable prejudice they might think they are suffering because of the loss of their free house bet would be the following:

The first missed but *un-precluded* payment remaining fair game is payment No. 135, the one due June 1, 2020. There are 225 payments to go until maturity. This Court is empowered to judicially declare that payment 135 of 360 of the original mortgage be due the first day of the calendar month following judgment in this case, with the remaining 225 payments becoming due on each successive calendar month thereafter, thus extending the maturity date of the loan by the number of months between June 1, 2020 and the new due date of payment **135**.[6]

The other possibility is to *keep* the current maturity date of **March 1, 2039**. (Exhibit J-2). This would result in a shortening of the amortization of the remaining balance by 51 months or more, depending on the new payment resumption day. The periodic payment would by necessity be greater, but so would the corresponding equity building.

---

[6] For example, if the first post judgment payment date is November 1, 2024, *that* month becomes No. 135 of 360. The revised maturity date u8nder that hypothetical would therefore be **July 1, 2043** (month 225 dating from Novenber 1, 2024)

Neither of the above discussed alternatives would require undue calculation or documentation sufficient to render such an outcome unworkable.

WHEREFORE, Defendants and Counterclaimant request that Summary judgment be entered in their favor as requested herein.

> Respectfully submitted,
>
> Defendants WVMF and Wilmington
>
> By Counsel,

DATED: August 9, 2024

> /s/ William A. Fogel_____
> William A. Fogel

Brock & Scott PLLC
30 Danforth Street, Suite 104
Portland, ME 04104
(860) 474- 8747
bill.fogel@brockandscott.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ *William A. Fogel*
WILLIAM A. FOGEL
