UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| FRANCINE A. FULLER and PETER A. PIETROSKI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:21-cv-00290-SDN |
| WVMF FUNDING, LLC and WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST I, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs Francine A. Fuller ("Fuller") and Peter A. Pietroski ("Pietroski") (collectively, "Plaintiffs") seek a declaratory judgment under 28 U.S.C. § 2201 that the mortgage and note once owned by WVMF Funding, LLC ("WVMF") and later assigned to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust I ("Wilmington") (collectively, "Defendants") are unenforceable and Plaintiffs hold title to the property securing the note free and clear of the mortgage and note (ECF No. 6). Wilmington counterclaims (ECF No. 19) for declaratory judgment in its favor on the continuing validity of the mortgage (Count 1); that it properly applied the fee award granted to Plaintiffs in the underlying unsuccessful foreclosure in state court to the Plaintiffs' account (Count 2); and that it may charge attorney's fees for defending this suit to the Plaintiffs' account (Count 3). Wilmington further counterclaims for unjust enrichment (Count 4) and the imposition of an equitable lien (Count 5). Plaintiffs and Defendants filed cross-motions for summary judgment (ECF Nos. 66, 69) on all claims

and defenses and the Court held oral argument on the motions via Zoom on November 5, 2024. For the reasons set forth below, the Court GRANTS Plaintiffs' motion and DENIES Defendants' motion.

## I.      Factual Background

Plaintiffs became the legal owners of property located at 254 Route 133 in Winthrop, Maine on July 27, 2007 by virtue of a deed recorded in the Kennebec County Registry of Deeds at Book 9443, page 119. Parties' Stipulated Joint Statement of Material Facts for Summary Judgment ("Joint SMF") (ECF No. 65) ¶ 1. Pietroski has been in uninterrupted possession of the property as his residence since 2007. Joint SMF ¶ 3.

In 2009, at the urging of their lender, Plaintiffs refinanced their 2007 loan with a new note and mortgage to obtain a better interest rate. Plaintiffs' Statement of Material Facts ("PSMF") (ECF No. 67) ¶¶ 1-2.[1] On February 9, 2009, Plaintiffs executed and delivered a promissory note in the amount of $156,056.00 to Regency Mortgage Corp. Joint SMF ¶ 4. The note was indorsed to GMAC Bank, then to GMAC Mortgage, LLC, then subsequently indorsed in blank. Joint SMF ¶ 5. At some point prior to February 20, 2018, WVMF became the owner and holder of the note. Joint SMF ¶ 6.

On February 20, 2009, Plaintiffs granted a mortgage on the property to Regency Mortgage Corp. to secure the note. Joint SMF ¶ 7. The mortgage is recorded at Book 9992, page 207 of the Kennebec County Registry of Deeds. Joint SMF ¶ 8. On April 14, 2017, Regency Mortgage Corp. executed an assignment transferring ownership of the mortgage to The Bank of New York Mellon Trust Company, N.A. as FHA Qualied Trustee for ResCap

---

[1] Defendants did not submit an opposing statement of material facts in accordance with Local Rule 56(c). The Court has verified that Plaintiffs' statements of material facts are supported by record citations, therefore they are deemed admitted. D. Me. Local R. 56(f) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

Liquidating Trust ("Bank of New York Mellon"), which was recorded in the Kennebec County Registry of Deeds in Book 12576, page 249. Joint SMF ¶ 9. On May 19, 2017, Bank of New York Mellon executed an assignment transferring ownership of the mortgage to WVMF, which was recorded in the Kennebec County Registry of Deeds in Book 12616, page 80. Joint SMF ¶ 10.

Soon after the 2009 refinancing, Plaintiffs experienced financial hardship when Pietroski was laid off during the Great Recession and Fuller became disabled and unable to work. PSMF ¶¶ 3-4. Plaintiffs tried but failed to keep up with their loan payments and applied to their then–loan servicer and owner, GMAC Mortgage, LLC ("GMAC"), for a loan modification under the Home Affordable Modification Program, but GMAC rejected their modification request. PSMF ¶¶ 5-7.

GMAC sued Plaintiffs for foreclosure in October 2011 but GMAC dismissed that action without resolving the default in 2012. PSMF ¶¶ 8-9. GMAC again filed for foreclosure in July 2013, which the parties attempted to resolve through a short sale. PSMF ¶¶ 10-11. Plaintiffs were approved for a short sale of approximately $22,000, but ultimately backed out of the short sale because their new loan servicer, Ocwen Loan Servicing, advised Plaintiffs it would not waive their deficiency despite GMAC's prior promise to waive such a deficiency. PSMF ¶¶ 12-13. In 2015, GMAC voluntarily dismissed its second foreclosure suit due to a standing defect similar to that in *Bank of America v. Greenleaf*, 2014 ME 89, 96 A.3d 700. PSMF ¶ 14.

In 2016, servicing of the loan transferred again to LoanCare. PSMF ¶ 15. By a Complaint for Foreclosure dated February 20, 2018, filed in the Augusta (Maine) District Court as Docket No. RE-18-013, WVMF commenced a foreclosure action against Plaintiffs seeking a judgment of foreclosure with respect to the mortgage and property. Joint SMF

¶ 11. Around the time of the third foreclosure suit, servicing again transferred to Statebridge Company. PSMF ¶¶ 15-16. Pietroski applied again for a loan modification but was denied because the arrears had grown too large over the years. PSMF ¶ 17.

In the foreclosure action, WVMF alleged that Plaintiffs were indebted to WVMF for the entire unpaid principal note balance of $151,855.66 plus interest and other charges due under the note and mortgage. Joint SMF ¶ 12. The matter proceeded to trial and ended with the Augusta District Court entering judgment against WVMF and in favor of Fuller and Pietroski dated May 23, 2020. Joint SMF ¶ 13.

On the same day, Fuller and Pietroski's trial counsel, Thomas Cox, Esq., provided a letter to WVMF's trial counsel, Bendett & McHugh, P.C., demanding the cessation of advances for insurance and taxes. Joint SMF ¶ 14. On June 3, 2020, WVMF filed a motion to alter or amend the judgment, which the Augusta District Court denied on March 31, 2021. Joint SMF ¶¶ 15, 20. WVMF appealed the Augusta District Court's judgment, but voluntarily dismissed its appeal a week before the brief was due. Joint SMF ¶¶ 21-23. The Augusta District Court's judgment became final on July 26, 2021. Joint SMF ¶ 24.

On October 1, 2020, servicing of the loan transferred to Carrington Mortgage Services. PSMF ¶ 19. On March 22, 2021, Attorney Cox provided a letter to WVMF's counsel advising that the mortgage loan servicer, Carrington Mortgage Services ("Carrington"), had made a municipal tax payment to the Town of Winthrop for the property on March 12, 2021, and offered to reimburse Carrington for that payment. Joint SMF ¶ 16. That offer was never accepted. Joint SMF ¶ 17.

On March 31, 2021, WVMF executed an assignment transferring ownership of the mortgage to Wilmington, which was recorded in the Kennebec County Registry of Deeds

in Book 13966, page 346. Joint SMF ¶ 18. WVMF remained the plaintiff in the foreclosure action in state court and never filed a motion to substitute. Joint SMF ¶ 19.

On August 7, 2021, Attorney Cox sent an email to WVMF and Wilmington with a demand to discharge the mortgage. Joint SMF ¶ 25. Wilmington has refused and the mortgage remains of record in the Kennebec County Registry of Deeds. Joint SMF ¶ 26.

On October 29, 2021, the Augusta District Court ordered WVMF to pay Plaintiffs or, if Plaintiffs so directed, their attorney $23,234.90 in attorney's fees and costs within forty-five days of the order with interest accruing at the statutory rate after the forty-five day period. Joint SMF ¶ 27. On November 3, 2021, Plaintiffs directed WVMF and Wilmington to pay the attorney's fees directly to Attorney Cox. Joint SMF ¶ 31. To date, no part of the fee award has been directed to Plaintiffs or Attorney Cox. Joint SMF ¶ 32.

On September 22, 2021, Bendett & McHugh delivered a letter to Fuller and Pietroski, through their attorney, with a heading on the first page that reads "REVOCATION OF LOAN ACCELERATION NOTICE OF REINSTATEMENT." Joint SMF ¶ 28. This letter purported to revoke the acceleration of the note, reinstate the loan, assert that the unpaid principal balance and escrow advances for insurance and taxes remained owing, and re-institute Plaintiffs' monthly payment obligations beginning November 1, 2021. Joint SMF ¶ 29. Plaintiffs' counsel notified WVMF's counsel on October 13, 2021 that Plaintiffs rejected all claims and assertions in the revocation letter. Joint SMF ¶ 30.

On November 8, 2021, Wilmington purported to credit Plaintiffs with $23,234.90 by offsetting via internal credit the amount of money it contends Plaintiffs owe Wilmington for unpaid escrow advances for municipal taxes, hazard insurance, and

mortgage insurance under the mortgage. Joint SMF ¶ 33. Plaintiffs object to this offset, and deny that they owe it and that Wilmington has the right to claim it. Joint SMF ¶ 34.

Plaintiffs have made no payment of any kind toward the 2009 note and mortgage since the September 2010 payment. Joint SMF ¶ 36. Plaintiffs relied on controlling case law from the Maine Supreme Judicial Court, sitting as the Law Court ("Law Court")[2] in refusing to make future loan payments and obtaining homeowners insurance without naming Wilmington as a co-insured, believing the note and mortgage were no longer enforceable and believing they owned the property free and clear of the mortgage. PSMF ¶ 20.

## II.    Procedural History

Plaintiffs filed their complaint on October 11, 2021 seeking declaratory judgment from this Court that the mortgage is unenforceable and they hold the property free and clear of the mortgage (ECF No. 1), and amended their complaint as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), on November 3, 2021 (ECF No. 6) (operative complaint). Defendants answered on December 8, 2021, asserting three affirmative defenses of unclean hands, unjust enrichment, and equitable estoppel in addition to three counterclaim counts seeking declaratory judgments from this Court as summarized above (ECF No. 14). Defendants sought and were granted leave to file their first amended counterclaim, which was filed on January 27, 2022 (ECF No. 19) (operative counterclaim). The first amended counterclaim adds two counts, one for unjust enrichment and the other for imposition of an equitable lien (*Id.*).

---

[2]*See Pushard v. Bank of Am., N.A.*, 2017 ME 230, 175 A.3d 103, *overruled in part by Finch v. U.S. Bank, N.A.*, 2024 ME 2, 307 A.3d 1049; *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, 170 A.3d 230, *overruled in part by Finch v. U.S. Bank, N.A.*, 2024 ME 2, 307 A.3d 1049.

On June 29, 2022, the Court issued a stay pending the Law Court's then-pending decision in *Finch v. U.S. Bank, N.A.* (ECF No. 29). The matter was further stayed pending the Law Court's then-pending decisions in both *Finch* and a related case, *J.P. Morgan Mortgage Acquisition Corp. v. Moulton* (ECF No. 53). Following the Law Court's decisions, the parties filed cross motions for summary judgment on August 9, 2024 (ECF Nos. 66, 69).

### III.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a rational factfinder could resolve it in favor of either party. *Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4-5 (1st Cir. 2010)). A fact is material if it could affect the outcome of the case. *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016) (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). The moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020). Then, the burden shifts to the non-moving party to show "specific facts sufficient to deflect the swing of the summary judgment scythe." *Tang*, 821 F.3d at 215 (quoting *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). Mere "conclusory allegations, improbable inferences, and unsupported speculation" will not suffice to create a genuine dispute of material fact. *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 92-93 (1st Cir. 2018) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993)).

Cross motions for summary judgment do not alter the summary judgment standard. *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023). The Court reviews

each motion "independently, viewing the facts and drawing inferences as required," and determines the appropriate ruling for each side. *Id.* at 6.

## IV.    Discussion

At the heart of the parties' dispute is whether a recently published decision of the Law Court, *Finch v. U.S. Bank, N.A.*, applies retroactively to this case. *See* 2024 ME 2, ¶ 51, 307 A.3d 1049. Prior to *Finch*, a defect in the statutorily required notice of default and right to cure, *see* 14 M.R.S.A. § 6111 (Westlaw through 2023 2d Reg. Sess.), resulted in a claim-preclusive judgment in favor of a homeowner defendant, forever forfeiting the lender's entire interest in the note and mortgage and transferring title to the borrower. *Finch*, 2024 ME 2, ¶¶ 5-6, 307 A.3d 1049; *see Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 36, 175 A.3d 103, *overruled in part by Finch*, 2024 ME 2, 307 A.3d 1049. The Law Court's holding in *Finch* overruled parts of its prior holding in *Pushard*, revising Maine's approach to claim preclusion in residential mortgage foreclosures. *Finch*, 2024 ME 2, ¶¶ 51-52, 307 A.3d 1049. Before addressing whether *Finch* applies in this matter, the Court provides an overview of the relevant Maine foreclosure law.

### A. Maine Foreclosure Law (pre-*Finch*)

"In Maine, foreclosure is a creature of statute," and the Law Court requires foreclosing plaintiffs to "strictly comply with all statutory foreclosure requirements." *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 8, 31, 96 A.3d 700. The elements of proof necessary to support a judgment of foreclosure include, *inter alia*, proof of a properly served notice of default and right to cure and the amount due on that mortgage note. *Id.* ¶ 18.

In 1997, the Law Court held that in foreclosure actions, a dismissal with prejudice or judgment in favor of the defendant have claim preclusive effect. *Johnson v. Samson*

*Constr. Corp.*, 1997 ME 220, ¶ 8, 704 A.2d 866. The Law Court reaffirmed this holding twenty years later "as good and settled law" in *Federal National Mortgage Ass'n v. Deschaine*, 2017 ME 190, ¶ 35, 170 A.3d 230, *overruled in part by Finch*, 2024 ME 2, 307 A.3d 1049.

The holding in *Johnson* was based on the note's mandatory acceleration clause, which provided that if payment under the note was defaulted and not made good within thirty days after written notice was provided, the entire unpaid balance became immediately due. *Johnson*, 1997 ME 220, ¶ 8, 704 A.2d 866. The foreclosure suit, then, was "an action for the accelerated debt." *Id.* Once accelerated, the entire contract became indivisible, and each installment payment merged into a unitary obligation. *Id.* A second suit to foreclose alleges "precisely what the complaint in the first action alleged:" that the mortgagor defaulted on the note and the mortgagee is entitled to a judgment on the amount due under the note. *Id.*

> Claim preclusion bars the relitigation of a claim "if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action."

*Id.* ¶ 6 (quoting *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595). All elements of claim preclusion being met, the second foreclosure suit was barred, regardless of any perceived windfall to the defendant-mortgagor. *Id.* ¶ 8 & n.1.

In *Deschaine*, the Law Court reaffirmed *Johnson*, but also addressed claim preclusion in the context of optional acceleration clauses. *Deschaine*, 2017 ME 190, ¶ 26, 170 A.3d 230. Under the mortgage and note at issue in *Deschaine*, the note holder had the option to accelerate the debt provided that the note holder took some affirmative action to provide notice of acceleration to the borrower. *Id.* ¶ 26. By filing the first foreclosure complaint, the note holder validly exercised its right to accelerate and the

9

filing of the complaint itself was sufficient to give the borrower notice of the exercise. *Id*. Since the note holder exercised its right to accelerate by bringing the first foreclosure complaint, at issue in the first action was the entire remaining balance of the note, and the second foreclosure action was held barred by claim preclusion because the entirety of the note was or might have been litigated in the first action. *Id*. ¶ 22 ("*Johnson* fully disposes of the issue in this case.").

In the same year as *Deschaine*, the Law Court again reaffirmed that a prior final judgment in favor of the mortgagor has claim preclusive effect on a successive suit to foreclose, this time addressing the interplay between acceleration clauses and 14 M.R.S.A. § 6111, Maine's statute governing notices of the right to cure. *Pushard*, 2017 ME 230, ¶¶ 22-23, 175 A.3d 103. In *Pushard*, the Pushards had previously prevailed in a foreclosure suit filed against them because the bank failed to prove (1) the Pushards breached the mortgage, (2) the amount due on the mortgage, and (3) that the bank had complied with the statutory requirements for notices of default. *Id*. ¶ 4. Five months after the court entered judgment for the Pushards on the foreclosure, the Pushards brought suit seeking a declaration they were entitled to a discharge of the mortgage and compelling the bank to record a release of the mortgage. *Id*. ¶ 5.

In *Pushard*, the bank argued that, because it failed to give proper notice under 14 M.R.S.A. § 6111 in its foreclosure suit, it could not have triggered the acceleration clause and therefore it was not precluded from enforcing the note and mortgage in a later action to foreclose. *Id*. ¶ 27. The statute provides that a mortgagee "may not accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default" without first providing the mortgagor with notice in accordance with the statute's requirements. 14 M.R.S.A. § 6111(1).

The *Pushard* court rejected the bank's argument that the statute rendered its acceleration by virtue of the foreclosure suit ineffective. *Pushard*, 2017 ME 230, ¶ 27, 175 A.3d 103. The Law Court reasoned that, under the bank's logic, a mortgagee that sent a perfect 14 M.R.S.A. § 6111 notice but failed to prove another substantive element of foreclosure would lose and be precluded from seeking to enforce the mortgage but a mortgagee that failed to comply with 14 M.R.S.A. § 6111 but proved all other elements of foreclosure would lose and would not be precluded from later seeking to enforce the mortgage. *Id*. ¶¶ 28-29. This, to the court, would be an absurd result. *Id*. ¶ 30. *Pushard* held that the reason the mortgagee lost on the merits in a foreclosure case had no bearing on whether a later claim to enforce the mortgage would be precluded. *Id. Pushard* further explicitly stated that because the bank was precluded from seeking to recover on the note or enforce the mortgage, the Pushards were entitled to the declaratory relief they sought. *Id*. ¶ 36. Under *Deschaine* and *Pushard*, judgment for the defendant automatically extinguished the mortgagee's interest. *Id*. ¶ 36; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230; *see Finch*, 2024 ME 2, ¶ 52 n.19, 307 A.3d 1049.

Such was the state of the controlling case law in 2018 when WVMF brought its foreclosure complaint, in July of 2021 when the Augusta District Court's judgment in favor of Plaintiffs became final, and in October of 2021 when the Plaintiffs instituted this action. The facts of this case as they stood when Plaintiffs filed their complaint are indistinguishable from *Pushard*. WVMF brought its foreclosure complaint in the Augusta District Court on February 20, 2018, alleging that it had exercised its rights under the note and mortgage to declare the entire remaining principal, accrued interest, and other sums due and payable immediately. Ex. J-6, Foreclosure Complaint (ECF No. 65-6) at 2, ¶ 13, 3. WVMF's action was tried on the merits and the Augusta District Court entered

judgment for Fuller and Pietroski because WVMF failed to serve notice in accordance with 14 M.R.S.A. § 6111. Ex. J-7, Judgment on Complaint for Foreclosure (ECF No. 65-7) at 5. This judgment was final as of July 26, 2021. Joint SMF ¶ 24. Under *Johnson*, *Deschaine*, and *Pushard*, Defendants were forever precluded from seeking to enforce the mortgage or collect on the note and Plaintiffs were entitled to the declaratory relief they seek as of the date they filed their complaint in this action, October 11, 2021 (ECF No. 1). Defendants do not even attempt to argue otherwise.

## B. *Finch v. U.S. Bank, N.A.*

The Law Court announced its decision overruling *Pushard* in part on January 11, 2024. *See Finch*, 2024 ME 2, 307 A.3d 1049. The holding of *Finch* adopts the bank's argument in *Pushard*. *Compare id.* ¶ 6, *with Pushard*, 2017 ME 230, ¶ 27. *Finch* holds that

> when a lender fails to comply with section 6111's requirements, the lender lacks the right to accelerate the note balance or commence a foreclosure action. . . . [T]he note cannot be, and is not, accelerated anyhow by the commencement of a foreclosure action that the lender also lacks the right to commence.

*Finch*, 2024 ME 2, ¶ 6, 307 A.3d 1049. In *Finch*, the Law Court characterized compliance with section 6111 as a "precondition to suit" which does not have claim preclusive effect. *Id.* ¶ 30, 32. Because the balance is not accelerated until section 6111's requirements have been met, the entire balance is not "in issue" in a foreclosure case where the court finds that section 6111's requirements are not met. *See id.* ¶ 37 n.12. What is or could be in issue in such a foreclosure case is the past due payments because a lender is not required to meet the strictures of section 6111 to bring suit for the past due payments only. *Id.* Therefore, if a lender loses a foreclosure case because it did not meet the requirements of section 6111, the lender is barred from recovering the past due amounts as of the date of

the first judgment in a successive suit because its entitlement to that amount was or could have been litigated in the first foreclosure action. *Id.* ¶¶ 37 n.12, 52. Aside from the precluded past-due amount, if a court finds a lender cannot foreclose because it failed to meet the section 6111 requirements, the parties are returned to the positions they were in before the suit and the lender could bring a new claim of foreclosure based on a subsequent breach. *Id.* ¶¶ 35, 37. The *Finch* court declined to repudiate the holdings in *Deschaine* and *Pushard* that a judgment rendering a mortgage unenforceable terminates the mortgagee's title interest.[3] *Id.* ¶ 52 n.19.

## C. Retroactivity

*Finch* was silent as to whether it was intended to have retroactive applicability. *See Finch*, 2024 ME 2, 307 A.3d 1049. Plaintiffs argue this Court should not apply *Finch* retroactively because Maine law compels prospective only application, it would be a manifest injustice to apply *Finch* retroactively, and prospective application would promote the public policy goal of encouraging public reliance on precedential decisions. Pls.' MSJ (ECF No. 66) at 8. Defendants argue that this Court need not address retroactivity because Wilmington held a "valid, recorded mortgage-based title" to the property when *Finch* was decided, therefore *Finch* applies. Defs.' Opp'n Pls.' MSJ (ECF No. 71) at 2. Defendants further highlight a recent Order of this Court applying the overruling of *Pushard* to a similar action that was commenced in 2016 to argue that *Finch* applies retroactively. Defs.' MSJ (ECF No. 69) at 4-6; *see Girouard v. Wells Fargo Bank, N.A.*, No. 2:17-cv-00022-LEW, 2024 WL 3691670, at *2-*3 (D. Me. Aug. 2, 2024). I first address Defendants' arguments.

---

[3] The Law Court published a related decision, *J.P. Mortgage Acquisition Corp. v. Moulton*, on January 30, 2024. 2024 ME 13, 314 A.3d 134. *Moulton* holds that a court may not declare the effect of its judgment for the mortgagor where the mortgagor has not counterclaimed seeking declaratory relief. *Id.* ¶ 13. *Moulton* does not bear on the issues of this case.

Defendants point to this Court's post-*Finch* decision in *Girouard v. Wells Fargo Bank, N.A.* to argue that the Court should now enter summary judgment in their favor. In *Girouard*, the Court reconsidered its prior entry of a summary declaratory judgment in favor of mortgagors who had previously prevailed in a state court foreclosure action due to the mortgagee's failure to provide a notice of default that complied with section 6111. *Girouard*, 2024 WL 3691670, at *1-*2. After summary judgment was granted to the Girouards in June 2018, Wells Fargo's counterclaim for unjust enrichment remained to be decided and was pending when Wells Fargo moved for a stay pending the Law Court's decision in *Finch*. *Id.* at *2. After *Finch* was decided, Wells Fargo moved to set aside or reconsider the Court's previous grant of summary judgment. *Id.* at *3. The Girouards did not contest Wells Fargo's request to reconsider and agreed that reconsideration was appropriate. *Id.* The Girouards did not argue that *Finch* should not be applied retroactively, rather they argued that a foreclosure court was the appropriate forum to determine Wells Fargo's rights under the mortgage. *Id.* at *4. In *Girouard*, the Court did not consider the question of whether *Finch* applies retroactively because the Girouards did not raise it. *See id.* Here, Plaintiffs have explicitly raised the issue of retroactivity, which this Court has not yet had occasion to consider. *Girouard* is distinguishable and does not compel a decision in Defendants' favor.

Defendants' other argument on retroactivity is that this Court need not consider retroactivity at all because at the time *Finch* was decided, "Wilmington owned a valid, recorded mortgage-based title to Plaintiff's [sic] Mortgage." Defs.' Opp'n Pls.' MSJ at 2. Defendants do not present any further information on what this means or argument on why this is so. The Court can only assume that Defendants' argument is that the mortgage interest was still valid by virtue of its recording with the Kennebec County Registry of

Deeds without a subsequent recorded discharge of the mortgage. But a recorded title is not necessarily a valid one. *Cf. Spickler v. Ginn*, 2012 ME 46, ¶¶ 1, 4, 40 A.3d 999 (where two parties possessed a recorded deed to the same property, the Law Court was tasked with deciding the rightful owner). Maine's recording act, 33 M.R.S.A. § 201 (Westlaw through 2023 2d Reg. Sess.), is a "race-notice statute," which protects subsequent purchasers of property without notice of prior conveyances so long as the subsequent purchaser records first. *Spickler*, 2012 ME 46, ¶¶ 9-10, 40 A.3d 999. The fact that this mortgage is still on record at the registry of deeds does not end the inquiry.

Defendants' bare assertion that it held a "valid" mortgage-based title to the property at the time *Finch* was decided is clearly contrary to the established pre-*Finch* precedent. The *Finch* opinion itself recognized that, under *Pushard*, judgment for the borrower because of a defect in a section 6111 notice automatically transferred title to the borrower. *Finch*, 2024 ME 2, ¶¶ 6, 52 n.19, 307 A.3d 1049; *see also Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230. Yet Defendants appear to be arguing that their title was never extinguished and have acted accordingly by attempting to collect on the mortgage even after the judgment for Plaintiffs became final. *See* Joint SMF ¶¶ 28-29, 33.

Defendants' arguments that *Finch* should be applied here without considering retroactivity and that such consideration is unnecessary are unavailing. As previously stated, *Finch* is silent on whether its holding should be applied retroactively. *See Finch*, 2024 ME 2, 307 A.3d 1049. Having no pronouncements on retroactivity from Maine's highest court, this Court, sitting in diversity, "must make an informed prophecy as to the state court's likely stance." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008).

The "normal practice" of the Law Court, when it "make[s] a departure from the rules of the past is to limit the applicability of the decision to causes of action arising after a certain date and to grant relief to the instant parties." *Davies v. City of Bath*, 364 A.2d 1269, 1273 (Me. 1982), *superseded by statute on separate grounds as recognized by Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 21 n.9, 796 A.2d 683. Prospective-only application is appropriate when "there has been substantial public reliance upon the former rule and little ability of litigants to foresee the change in the law accomplished by th[e] opinion." *Myrick v. James*, 444 A.2d 987, 1002 (Me. 1982), *superseded by statute on other grounds as recognized by Erlich v. Ouellette, Labonte, Roberge & Allen, P.A.*, 637 F.3d 32, 37 & n.7 (1st Cir. 2011); *Jones v. Billings*, 289 A.2d 39, 43 (Me. 1972) (an "abrupt and drastic departure" from precedent on a matter "should be given only limited application in order to reduce transitional impact"). Other considerations the Law Court has found important when deciding whether to limit the retroactivity of a rule change include unfairly imposing liability on parties unprepared to meet the costs, "important reliance interests of public concern," and the interests of landowners. *See Davies*, 364 A.2d at 1273 (applying decision to abolish governmental immunity from tort liability prospectively because retroactive application would "unfairly impose liability on governmental units that were unprepared to meet the high costs of tort damages"); *Black v. Solmitz*, 409 A.2d 634, 640 (Me. 1979) (limiting retroactive application of decision to limit parental immunity based on "important reliance interests of public concern," including potential defendants and insurers omitting investigative procedures in reliance on the old rule); *Poulin v. Colby Coll.*, 402 A.2d 846, 851 (Me. 1979) (limiting retroactive application of the holding abolishing the distinction between licensees and invitees out of concern for "landowners as a class").

16

Here, Defendants have made no argument that this Court should depart from the normal practice of applying changes in decisional law prospectively and have not grappled with the case law on retroactive application at all. Plaintiffs assert that they and similarly situated homeowners who prevailed in foreclosure actions reasonably relied on the pronouncements of the Law Court in *Pushard* and *Deschaine* that their mortgages were unenforceable and they owned their properties free and clear of the mortgages.

After reviewing the Law Court's case law on retroactive applicability and carefully considering the principles articulated therein and the interests of the parties and the public, the Court's "informed prophecy" and the rule it applies is that the Law Court would not apply *Finch* retroactively to these Plaintiffs and would instead apply the law announced in *Finch* prospectively only to final judgments dated on or after the date of *Finch's* publication. *See Andrew Robinson Int'l, Inc.*, 547 F.3d at 51. All of the considerations examined by the Law Court when it is deciding whether to limit retroactive application of a change in decisional law weigh in favor of limiting the retroactive applicability of *Finch*. The most important consideration, which appears time and time again in the relevant case law, is reliance. *See Myrick*, 444 A.2d at 1002; *Davies*, 364 A.2d at 1273; *Black*, 409 A.2d at 640. Here, the reliance interests of the public, Plaintiffs, and those similarly situated to the Plaintiffs, strongly counsel against applying *Finch* retroactively. It was entirely reasonable for Plaintiffs to rely on controlling case law and cease making payments toward an unenforceable mortgage. Homeowners like Plaintiffs, who relied on final judgments rendered in their favor while *Pushard* and *Deschaine* had the force of law, have likely further encumbered their properties and invested time and money in repairs and improvements they would not have otherwise undertaken under threat of foreclosure. Subsequent lenders likely also have relied on the case law when

extending financing secured by property no longer encumbered by unenforceable mortgages. Indeed, the Law Court has recognized that the public "has been induced to place strong reliance" on real property law precedent, an area of law where "certainty and predictability" are the "benchmark." *Brown v. Fuller's Heirs*, 347 A.2d 127, 130 (Me. 1975).

These reliance interests are different in kind from the reliance interests deemed unreasonable in *Finch*. *See Finch*, 2024 ME 2, ¶ 46, 307 A.2d 1049. In *Finch*, the majority discounted the reliance interests of homeowners who could merely hope that their mortgage loan servicers would make fatal errors in notices of default and right to cure, noting it was unreasonable to rely on such hope. *Id.* Here, the Augusta District Court already determined the validity of the notice of in its final judgment. Plaintiffs here and those similarly situated relied on the final judgments and pronouncements of Maine's highest court about the consequences of those judgments. They had more than mere hope that their lenders would make a fatal error in their efforts to foreclose; they had final judgments stating so definitively and precedent from the state's highest court holding they were free of the mortgage encumbrance as a result. *See Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230; *see also Finch*, 2024 ME 2, ¶¶ 6, 52 n.19, 307 A.3d 1049.

Further, the Plaintiffs here and those similarly situated had "little ability . . . to foresee the change in the law." *Myrick*, 444 A.2d at 1002. It would be unjust to now apply *Finch* retroactively and effectively reinstate mortgages and expose homeowners to the possibility of years of arrears and risk of foreclosure proceedings they are unprepared to meet the costs of and had no notice of. *See Davies*, 364 A.2d at 1273. This outcome would be particularly unfair when balanced against the interests of the lenders who failed to

prove their foreclosure cases, who likely have long ago written off the loss and have the financial ability to absorb it. *See id.* (balancing the interests that would be harmed by full retrospective application against the interests harmed by prospective application from a date certain).

Applying *Finch* prospectively also serves the property law policy goals of "certainty and predictability," *Brown*, 347 A.2d at 130, and would "reduce transitional impact," *Jones*, 289 A.2d at 43. As evidenced by Defendants' lengthy discussion about "the going forward obligation" should this Court decide to apply *Finch* retroactively, *see* Defs.' MSJ at 7-16, retroactive application of *Finch* would introduce significant uncertainty into the legal relationships between Plaintiffs (and similarly situated homeowners) and their former lenders. *Finch* suggests that, following an unsuccessful foreclosure action based on a defect in the section 6111 notice, the parties should be returned to the position they were in before the failed foreclosure suit. *See Finch*, 2024 ME 2, ¶¶ 35, 37, 307 A.3d 1049.

Applied retroactively, Plaintiffs would be responsible for years of arrears, but even Defendants are unable to say with certainty exactly how many missed payments Plaintiffs would be on the hook for, instead suggesting a "best case" scenario for the borrowers to the Court to use for calculation.[4] *See* Defs.' MSJ at 8-10. Applying *Finch* prospectively

---

[4] If the holding in *Finch* were to apply retroactively, calculating the precise amount Plaintiffs - and those similarly situated - would owe is an open question that does not have a straight-forward answer. Would Plaintiffs be on the hook for a monthly late fee for each "missed" installment payment since a defective notice of default is no longer sufficient to accelerate the debt? Would these Plaintiffs be immediately behind on several years worth of monthly payments between the date of the Augusta District Court's final judgment and today? Would interest apply? In what amount? Defendants concede in this case that such an outcome would be too harsh and suggest the Court not include most of the interim principal payments and other interest and balances due, and reestablish a monthly payment obligation. Defs.' MSJ at 13-16. While Defendants assert this approach is reasonable and fair, it is not at all clear to the Court that such an approach would be either correct under the law or readily applicable to any other similarly situated persons. And if it is not correct under the law, a subsequent attempt to foreclose could introduce even more chaos into the calculations because, in order to successfully foreclose, mortgagees must prove the precise amount owed. *See M&T Bank v. Plaisted*, 2018 ME 121, ¶ 31, 192 A.3d 601, *overruled in part on other grounds by Bank of N.Y. Mellon v. Shone*, 2020 ME 122, 239 A.3d 671.

only to final judgments dated on or after the date of *Finch's* publication, on the other hand, would produce more predictable outcomes. A final judgment in favor a borrower rendered before *Finch*'s publication date results in an unenforceable mortgage with no need to engage in calculating arrears that Plaintiffs reasonably believed would never be collectible.

Additionally, it would be unjust to reward the lender here for attempting to enforce the mortgage after the Augusta District Court's judgment became final. *See* Joint SMF ¶¶ 28-29 (Defendants attempted to revoke acceleration and reinstate monthly payments in September 2021). It was unreasonable for Defendants to continue attempting to collect payments on a mortgage that controlling case law clearly rendered unenforceable. *See Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230. Rather than promoting respect for the Law Court's precedent, retroactive application of *Finch* would reward Defendants' behavior that flagrantly disregarded the prior final judgment and controlling precedent at the time.

In sum, there are no disputed facts on summary judgment. The law at the time of the Augusta District Court's entry of judgment for Plaintiffs and at the time Plaintiffs brought this suit was crystal clear: their mortgage automatically became unenforceable and no longer encumbered their property. *See Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230. Although the law has since changed, this Court does not apply *Finch* retroactively because Plaintiffs and those similarly situated reasonably relied on the Law Court's pronouncements in *Deschaine* and *Pushard*.

Plaintiffs are entitled to judgment as a matter of law,[5] therefore the Court GRANTS Plaintiffs' motion for summary judgment.

## D. Defendants' Claims

Defendants seek declaratory judgments from this Court that (1) the mortgage is valid and Plaintiffs owe Defendants on the mortgage, (2) Defendants met their fee obligation by applying the offset, and (3) Defendants are entitled to attorney's fees for defending this action (ECF No. 19). The first request for declaratory judgment, that the mortgage is valid, is the inverse of Plaintiffs' request for declaratory judgment. For the reasons discussed at length above, the mortgage is not enforceable and Defendants' claim for a declaration of this Court that the mortgage interest remains valid is DENIED.

Because Defendants' first request for declaratory judgment is denied, it follows that their second and third requests are also denied. In their second count for declaratory judgment, Defendants seek a declaration that they met their attorney fee award obligation by applying the award as a credit to Plaintiffs' account. This request for declaratory judgment is DENIED because the mortgage is unenforceable and the Plaintiffs do not owe any further payments to either Defendant. Therefore crediting their account is an inappropriate means of meeting the obligation under the Augusta District Court's fee award. Further, the fee award directs WVMF to "pay to defendants" (Fuller and Pietroski) the ordered attorney fee. Ex. J-14, Order on Defendant's [sic] Motion for Attorney's Fees (ECF No. 65-14) at 3. Crediting an uncollectible account does not constitute "pay[ing the fee award] to defendants."

---

[5] Defendants' Answer (ECF No. 14) asserts three affirmative defenses of unclean hands, unjust enrichment, and equitable estoppel. However, Defendants made no argument for these affirmative defenses in their motion for summary judgment or their opposition to Plaintiffs' motion for summary judgment. Therefore, the affirmative defenses are waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Defendants seek a further declaration that they may charge their attorney's fees for defending this action to the Plaintiffs' account because this action "constitutes a 'legal proceeding that may significantly affect Lender's rights in the property.'" First Amended Counterclaim (ECF No. 19), at 4, ¶ 18. Because the Court has determined that the mortgage contract and Defendants' title interest were automatically extinguished and unenforceable upon the entry of final judgment from the Augusta District Court, Defendants can no longer seek to enforce any provisions of the mortgage against Plaintiffs. Defendants' Count Three is DENIED.

Defendants make no argument on why they are entitled to prevail on their counterclaims for unjust enrichment and the imposition of an equitable lien in their motion for summary judgment or in their opposition to Plaintiffs' motion for summary judgment. Therefore, summary judgment on these counterclaims is DENIED as waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Even if Defendants had not waived these counterclaims, equitable relief would not be appropriate because "[t]he existence of a contractual relationship[] 'precludes recovery on a theory of unjust enrichment.'" *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863 (quoting *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 49 n. 1 (Me. 1996)). The parties' relationship here was governed by the note and mortgage contracts. Therefore, recovery on a theory of unjust enrichment is precluded. Further, equitable remedies "will not be granted where there exists an adequate remedy at law . . . or where an adequate legal remedy, once available, has been lost by the failure of the party seeking equitable relief to pursue that remedy." *McIntyre v. Plummer*

*Assocs.*, 375 A.2d 1083, 1084 (Me. 1977) (citations omitted). Defendants' motion for summary judgment is DENIED in its entirety.

## V.    Conclusion

Because the statements of material facts establish that Plaintiffs were entitled to the declaratory relief they seek at the time they commenced this action and case law from Maine's highest court leads the Court to "prophesize" that the Law Court would not apply intervening case law retroactively to the Plaintiffs and would instead apply the law announced in *Finch* prospectively only to final judgments dated on or after the date of *Finch's* publication, the Court GRANTS Plaintiffs' motion for summary judgment (ECF No. 66) and DENIES Defendants' motion for summary judgment (ECF No. 69). Pursuant to Plaintiffs' request for declaratory judgment in their First Amended Complaint (ECF No. 6), the Court declares as follows: The mortgage on the property 254 Route 133 in Winthrop, Maine, and the note which the mortgage secures, once owned by WVMF Funding, LLC and later assigned to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust I are unenforceable. Plaintiffs Francine A. Fuller and Peter A. Pietroski hold title to such property free and clear of the mortgage encumbrance.

SO ORDERED.

Dated this 18th day of December, 2024.

/s/ STACEY D. NEUMANN
**STACEY D. NEUMANN**
**UNITED STATES DISTRICT JUDGE**